# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**COMMONWEALTH OF PENNSYLVANIA**
*ex rel.* **BOARD OF PROBATION AND**
**PAROLE,** *et al.,*

|  |  |
|---|---|
| **Plaintiffs,** | **Case No. 1:04CV00741 (ESH)** |
| *v.* | **Judge: Ellen S. Huvelle** |

**INTERSTATE COMMISSION FOR**
**ADULT OFFENDER SUPERVISION,**

**Defendants.**

## DEFENDANT'S MOTION TO DISMISS

Defendant, Interstate Commission for Adult Offender Supervision

("Commission"), by undersigned counsel, pursuant to FRCP 12, based upon the attached

Consolidated Memorandum of Points and Authorities and all other applicable case law,

hereby moves this Court for an Order dismissing this action for failure to state a claim

upon which relief can be granted.  A Motion to Transfer Venue, in the alternative, is filed

concurrently herewith.

Respectfully submitted,

MASTERS, MULLINS & ARRINGTON        ARENT FOX PLLC

| _____/s/_____ \_\_ | _____/s/_____ |
|---|---|
| Richard L. Masters | Hunter T. Carter, Esq. |
| 1012 South Fourth Street | Randall A. Brater, Esq. |
| Louisville, Kentucky 40203 | Arent Fox PLLC |
| (502) 582-2900 | 1050 Connecticut AVE NW |
| (502) 587-0931 (fax) | Washington  DC  20036-5339 |
|  | (202) 857-6000 |
|  | (202) 857-6395 (fax) |

**CO-COUNSEL FOR DEFENDANT**        **CO-COUNSEL FOR DEFENDANT**

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **COMMONWEALTH OF PENNSYLVANIA** *ex rel*. **BOARD OF PROBATION AND PAROLE,** *et al.*,<br><br>        **Plaintiffs,**<br>*v.*<br><br>**INTERSTATE COMMISSION FOR ADULT OFFENDER SUPERVISION,**<br><br>        **Defendants.** | **Case No. 1:04CV00741 (ESH)**<br>**Judge: Ellen S. Huvelle** |

**CONSOLIDATED MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS OR, ALTERNATIVELY, TO TRANSFER VENUE UNDER 28 U.S.C. §1404(a)**

**I.   INTRODUCTION**

Like a battlefield surgeon sorting out the hopeful from the hopeless, a motion to dismiss invokes a form of legal triage, a parsing of viable claims, if any, from those doomed by law. *See Iacampo v. Hasbro, Inc.*, 929 F. Supp. 562 (D.R.I. 1996). Accordingly, the Commission submits this memorandum showing that a parsing of Pennsylvania's claim will result in dismissal for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6) and in particular on 'justiciability' grounds.

In the alternative, the Commission requests that this Court transfer this case, pursuant to 28 U.S.C. § 1404(a) and based on *forum non conveniens*, to the Eastern District of Kentucky where the Commission's principal office is located, and where a substantial part of the events or omissions giving rise to the claim occurred. *See Relf v.*

*Gasch,* 511 F.2d 804, 807 (D.C. Cir. 1975); *see also Norwood v. Kirkpatrick,* 349 U.S. 29, 32 (1955).

## II.    BACKGROUND

The underlying dispute in this case arises from administrative rulemaking procedures by the Interstate Commission for Adult Offender Supervision ("Commission").  This body was established by state statutes creating the Interstate Compact for Adult Offender Supervision (hereinafter "Interstate Compact"), which has now been enacted by the legislatures of forty-nine states and the District of Columbia. The overarching purpose of this compact, which replaces the 1937 Interstate Compact on Probation and Parole in forty-nine states, is to promote public safety by ensuring that sending and receiving states have adequate notice that an adult offender has relocated and by requiring that adult offenders be provided appropriate supervision in a receiving state. This interstate compact is the *only* federal or state statutory mechanism that permits and regulates the interstate movement of offenders under the supervision of courts, probation authorities, parole authorities, or other criminal justice agencies.  Moreover, as a Congressionally-approved compact under the Crime Control Act of 1934, the Interstate Compact for Adult Offender Supervision is a "law of the union" and enjoys standing as federal law.  *Cf. Cuyler v. Adams,* 449 U.S. 433, 440 (1981).

Under the compact statute, the Commission, pursuant to this legislation, is empowered to promulgate rules.  These rules have the force and effect of statutory law and "shall be binding in the compact states. . ."  All felony offenders are subject to terms of the compact and its rules.  Furthermore, the compact and its rules extend not only to offenders in more traditional probation or parole status, but also to those subject to

deferred or suspended sentencing provisions.  Consequently, an offender who has entered a plea of guilt or no contest and has received a suspended sentence is covered by the Interstate Compact.

Pursuant to this legislatively-delegated authority, the Commission has adopted new administrative rules that become effective on August 1, 2004.  Among the rules promulgated by the Commission is Rule § 2.105 concerning the eligibility of offenders convicted of misdemeanors to be supervised under the Interstate Compact.  Under Rule 2.105, the criteria for eligibility are intended to exclude "minor" misdemeanants from regulation under the compact.  The new regulations specify that the types of misdemeanants subject to supervision will include an offense in which a victim has incurred direct or threatened physical or psychological harm; a second or subsequent misdemeanor offense of driving while impaired by drugs or alcohol; and a sexual offense which requires that an offender register as a sex offender in the sending state.

In the action filed by the Commonwealth of Pennsylvania (hereinafter "Pennsylvania"), the plaintiff agencies seek judicial review of the rules pertaining to misdemeanants §§ 1.101(aa), 2.105 and 2.106, on the grounds that the rulemaking procedures followed by the Commission were allegedly not in compliance with the compact statute and the compact bylaws.  At the same time, Pennsylvania is seeking to alter those same rules through the Commission's own procedures.  Therefore, Pennsylvania seeks to enlist the aid of the Courts while Pennsylvania seeks to have the Commission alter the rules pertaining to misdemeanants.

The Defendant seeks to have this action dismissed for failure to state a claim upon which relief can be granted and because Plaintiffs' claims were brought subsequent to the

expiration of the time in which such a claim can be made. Alternatively, the Defendant requests that this Court transfer this case to the Eastern District of Kentucky under 28 U.S.C.§ 1404(a) so that this dispute can be litigated in the federal judicial district where the Commission's national headquarters is located, where its executive director and staff reside and where its official books and records are located.

## III.     STATEMENT OF THE FACTS OF THE CASE

Although, for purposes of a motion under Rule 12(b)(6), the well-pleaded factual allegations of the Complaint must be accepted to test their legal sufficiency, we submit in addition such information as is also before the Court on a contemporaneous motion for preliminary injunction, in light of the unusual legal and factual context of this proceeding.

During the November 2003 annual meeting of the Interstate Commission for Adult Offender Supervision, Rule 2.105 was adopted by the Commission, which had the effect of making all misdemeanants eligible for supervision under the compact. After the rule was adopted and prior to the adjournment of the annual meeting, many commissioners expressed concern about their respective states' ability to comply with the newly adopted misdemeanor rule. In response, the Commission Chair appointed an Ad Hoc Committee on Misdemeanants to consider the issue and report back to the Commission with appropriate recommendations. The members of the Ad Hoc Committee included commissioners Doreen Geiger from the State of Washington, Warren Emmer from the State of North Dakota, Tina Hayes from the State of Florida and Benjamin Martinez of Pennsylvania. The committee was chaired by Jim Cosby of Tennessee. The purpose of the committee as set forth in its report was ". . . simply to try

and reach a compromise regarding the controversial misdemeanor rule." A true copy of said report is attached as Exhibit 1 to the Affidavit of Don Blackburn, filed in this action with the Commission's Memorandum in Opposition to the Motion for Preliminary Injunction, on July 26, 2004. As evidenced by the attachments to the report, the Ad Hoc Committee met on December 9, 2003, January 8, 2004, and January 14, 2004 to consider the matter and conducted a survey of all member states in order to obtain further input from the member states. Over 71% of the 45 states responding indicated the ability to comply with the proposed amendment to the misdemeanor rule, including the Commonwealth of Pennsylvania. *See* Exhibit 1 to the July 26, 2004 Affidavit of Don Blackburn, Misdemeanor Survey Report, p. 1.

On January 14, 2004, by majority vote of the Ad Hoc Committee, amendments to the misdemeanor rules were recommended for consideration by the Executive Committee of the Commission with the recommendation that consideration of the proposed amendments be scheduled on an expedited basis prior to the effective date of the new rules on August 1, 2004 in order to promote consistency in the training of interstate compact administrators before the effective date of the new rules. The Executive Committee approved the Ad Hoc Committee's recommendations and referred the amendments to the Interstate Commission for consideration. *See* Affidavit of D. Blackburn, ¶8. Prior to that time, the text of the proposed rule and the reasons for the amendment, including the reports, minutes, surveys and attachments of the Ad Hoc Committee on Misdemeanants were published on the website of the Interstate Commission for Adult Offender Supervision at www.adultcompact.org. In addition, public notice of the scheduled meeting of the Commission was published in the official

newsletter of the Commission and posted on its website. Individual electronic notice was also furnished to each commissioner concerning this meeting and its purpose. Also published on the Commission's website was notice of a public hearing scheduled on March 11, 2004 at the Commission's national headquarters, at which time interested persons were invited to submit written comments and to appear in person or telephonically to provide oral comments concerning the proposed rule. All comments received from this process were received and reviewed and communicated to the members of the Commission prior to consideration of the proposed rule at its scheduled meeting on March 12, 2004. On that date, the Commission convened and approved the amended rules pertaining to the supervision of misdemeanors, which are scheduled to take effect along with the other rules promulgated by the Commission on August 1, 2004.

Pennsylvania filed this action on or about May 19, 2004. Thereafter, Pennsylvania, acting through its duly appointed Commissioner, Benjamin Martinez, also proposed amendments to Rules 2.105 and 2.106 concerning misdemeanants, which amendments were filed with the Rules Committee of the Interstate Commission on or about June 3, 2004 for review and recommendation to the Commission at its third annual meeting, which is scheduled to assemble in Atlanta, Georgia, during the period from October 24, 2004 through October 27, 2004. *See* previously-filed Affidavit of D. Blackburn at Exhibit 3.

## IV.    LEGAL ARGUMENT

### A.    Pennsylvania's Complaint Is Nonjusticiable and Fails To State A Claim Upon Which Relief Can Be Granted

Pennsylvania's complaint fails to state a claim upon which relief can be granted for two reasons: (i) because its claims are nonjusticiable political questions, and (ii)

because Pennsylvania cannot establish under any circumstances that the amendments to the misdemeanant rules do not meet the Commission's requirement that there be "substantial evidence" in the record, following notice and comment, to support these amendments. These impediments warrant dismissal of this action.

For purposes of determining whether a plaintiff has failed to state a cause of action, the factual allegations of the complaint must be taken as true, and any ambiguities or doubts must be resolved in favor of the pleader. *See Scheuer v. Rhodes*, 416 U.S. 233, 236 (1974). Despite this generous standard, the complaint must contain sufficient information showing that there exists some recognizable legal theory upon which the requested relief can be granted. *District of Columbia v. Air Fla., Inc.,* 750 F.2d 1077 (D.C. Cir. 1984). The Court must dismiss a complaint where, even assuming all the factual allegations are true, the plaintiff has failed to establish an entitlement to relief based on those facts. *Gregg v. Barrett*, 771 F.2d 539 (D.C. Cir. 1985).

### 1.   Pennsylvania's Claims Are Nonjusticiable "Political Questions"

The Court should be guided by the justiciability doctrine concerning so-called "political questions," under *Baker v. Carr*, 369 U.S. 186 (1962), as well as this Court's doctrine of "equitable discretion" or "remedial discretion," resulting from unsuccessful attempts by members of Congress to involve the Courts in legislative decisions.

For federalism reasons, federal courts have chosen to not exercise jurisdiction under the "political question doctrine," also referred to as "nonjusticiability," in cases that present questions entrusted to the political branches, and best resolved by the relevant political body. *See* Rotunda, Nowak & Young, TREATISE ON CONSTITUTIONAL LAW, SUBSTANCE AND PROCEDURE § 2.16. In this case, Pennsylvania seeks to have this Court

circumvent the Commission's rulemaking process to help Pennsylvania advance, even impose, its own version of the misdemeanant rules. This is inappropriate for judicial consideration because this dispute is best resolved through the Commission's own rulemaking process and federal courts are loath to interfere in the administration by political bodies of their own rules for making law.

*Baker v. Carr,* 369 U.S. 186 (1962), sets out six independent tests for the existence of a political question: [1] a textually demonstrable constitutional commitment of the issue to a coordinate political department; or [2] a lack of judicially discoverable and manageable standards for resolving it; or [3] the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion; or [4] the impossibility of a court's undertaking independent resolution without expressing lack of the respect due coordinate branches of government; or [5] an unusual need for unquestioning adherence to a political decision already made; or [6] the potentiality of embarrassment from multifarious pronouncements by various departments on one question. *Id.* at 217.

In this case, at least the second and third tests are applicable to the rulemaking process of the Commission in which Pennsylvania is asking the Court to intervene and to substitute its judgment for that of the members of the Commission. However, because the rulemaking process established by the Commission is also a legislative process, by its nature it is ad hoc and is inevitably a policy making process "of a kind clearly for nonjudicial discretion." *Baker v. Carr,* 369 U.S. at 217. Similarly, the *Gilligan* case involved a claim where judicial review was sought of duties explicitly delegated to Congress under Article I, § 8, Clause 161 on training the military, in particular, the Ohio

National Guard, with respect to the use of force in the suppression of civil disorders such as student protests. The Court agreed with the dissenting member of the U.S. Court of Appeals for the Sixth Circuit (Celebrezze, J.) to which the writ of certiorari was issued, whom the Court indicated had "correctly read *Baker v. Carr*" in determining that the congressional and executive authority to prescribe and regulate the training of the National Guard "precludes any form of judicial regulation of the same matters." *Gilligan*, 413 U.S. at 8.

Pending the outcome of political processes, courts have strained to avoid becoming a political pawn. For example, a member of a legislative body cannot enjoin the byproduct of a political process in which it participated because the political body itself is where these grievances should be redressed. *See Coleman v. Miller,* 307 U.S. 433, 450-54 (1939). In *Coleman,* the plaintiff members of the Kansas Senate, whose votes against ratification of a constitutional amendment were overridden, requested the Court issue an injunction restraining the officers of the Senate and House from signing the resolution and the Kansas Secretary of State from authenticating it and delivering it to the Governor. The Kansas plaintiffs' claims, like Pennsylvania's, included allegations that the amendment was not properly ratified because it allegedly was adopted in violation of legislative procedural rules and not within a reasonable time period. The Court held that such issues were "political questions" and as such were "nonjusticiable." 307 U.S. at 450, 454. Similarly, a claim challenging the Commonwealth of Kentucky's procedure for determining the results of a contested election of the Governor and Lieutenant Governor was not justiciable. *See Taylor v. Beckham No. 1,* 178 U.S. 548, 580-81 (1900). More recently, in *Vieth v. Jubelirer*, 124 S.Ct. 1769, 1776 (2004), the

Supreme Court, in holding that political gerrymandering claims brought while the political process is ongoing were "nonjusticiable," observed that the courts have "no business entertaining claims of unlawfulness where the question is entrusted to one of the political branches or involves no judicially enforceable rights." *Id.* at 1776; *see also Nixon v. United States,* 506 U.S. 224 (1993) (challenge to procedures used in Senate impeachment proceedings).

Here, the amendments to the misdemeanant rules were promulgated by the Commission, an administrative agency created by the forty-nine state members and the District of Columbia, consented to by Congress, and in which Pennsylvania has a duly appointed delegate. That delegate, and Pennsylvania, have turned to this Court seeking to interfere with the rulemaking process and bar a current rule from coming into effect, at the precise time that Pennsylvania is also seeking adoption of its alternative and preferred version of the misdemeanor rules. Because Pennsylvania's proposed amendments to the misdemeanant rules *are now* the subject of pending proceedings before the Commission, this case is analogous to those categories of cases, discussed in the preceding several pages, where the Court's have declined to become involved in what is currently a political question, not a justiciable one. It is, today, a question before the Commission whether to adopt Pennsylvania's proposal, and therefore grant the relief sought in this case, namely, vacatur of the Commission's misdemeanant amendments. *A fortiori*, it is a political issue for the Commission whether to delay implementation of the rules, although Pennsylvania failed to avail itself of that procedure. Pennsylvania finds itself in a position not dissimilar to the several cases cited above, since all of Pennsylvania's issues may yet be resolved.

As a result, Pennsylvania seeks the aid of the Court to support its political strategy to persuade the member states of the Commission to adopt its version of the rules with regard to misdemeanants. Neither Pennsylvania nor this Court should determine the appropriate laws to be enforced by each state that is a member of the Commission. The Court should not exercise jurisdiction over this purely political matter.

**2. The Court Should Exercise "Equitable Discretion" to Decline to Hear This Case at This Time**

The Courts in this Circuit have relied upon the doctrine of "equitable discretion" in cases where a "political question" has not squarely been presented, but in which it is determined that proper resolution in a controversy arising among members of Congress lies in the legislative process, because "the congressional plaintiff could clearly receive substantial relief from his congressional colleagues in the form of enactment of a new statute or repeal or amendment of the statute in question." *Gregg v. Barrett*, 771 F.2d 539, 544 (D.C. Cir. 1985) (dismissing plaintiffs' complaint under the equitable discretion doctrine without reaching standing or justiciability). The invocation of this doctrine effectively forecloses a member of Congress from seeking this court's jurisdiction to test the validity of a statute "passed over an objecting vote." *See Melcher v. Federal Open Mkt. Comm.,* 836 F.2d 561 (D.C. Cir. 1987), cert. denied, 486 U.S. 1042 (1988)*; see also Riegle v. Federal Open Mkt. Comm.,* 656 F.2d 873 (D.C. Cir.)*, cert. denied,* 454 U.S. 1082 (1981).

An analogous situation exists in this case. Pennsylvania through its appointed Commissioner can clearly receive "substantial relief" from its colleagues who are voting members of the Commission in the form of a further amendment of the misdemeanant rules to which Pennsylvania objects. "Under the doctrine of equitable discretion, the

availability of an internally available remedy [here, to Pennsylvania and Martinez] means that it would be an abuse of discretion for the judiciary to entertain the action." *Humphrey v. Baker,* 848 F.2d at 214. Thus, Pennsylvania's Complaint should be dismissed. *Gregg v. Barrett*, 771 F.2d 539 (D.C. Cir. 1985).

**3.** **Pennsylvania Cannot Make The Requisite Showing To Invalidate The Commission's Adoption of the Misdemeanant Rules**

Because the issues raised in Pennsylvania's complaint are nonjusticiable political questions or should not be entertained in the exercise of the Court's equitable discretion, the Court need not reach the merits of Pennsylvania's claims. However on more fundamental grounds, as shown herein, its complaint must be dismissed because Pennsylvania has failed to state a cause of action. FED.R.CIV.P. 12(b)(6).

Pennsylvania argues that the amendments cannot be enacted because of procedural deficiencies. Pennsylvania, however, does not (and cannot truthfully) allege that the Commission failed to comply with its own rules regarding notice, comments and public debate. Instead, Pennsylvania cites Article VIII of the Commission's bylaws and challenges the amendments on the basis of alleged procedural deficiencies. But Article VIII of the bylaws only allows a rule to be held unlawful and set aside by a court if it ". . . finds that the Commission's action is not supported by substantial evidence in the rulemaking record." Here, Pennsylvania has failed to make a showing that the rule lacks substantial evidence to support it. Indeed, there is abundant evidence in the Commission's record that supports the adoption of the amendments, including findings of the Ad Hoc Committee and the extensive survey it conducted of the Commission's members. Pennsylvania has not made any allegation to the contrary in its Complaint.

The Complaint fails to address at all that the rulemaking record for the misdemeanant amendments shows them to be the product of extensive research, review, discussion and debate among the members of the Commission. The Commission, pursuant to its rules, created an Ad Hoc Committee on Misdemeanants to address the concerns expressed by many commissioners regarding their ability to comply with the misdemeanor rule adopted in November 2003. The goal of the committee was to reach a compromise regarding the misdemeanor rules. *See* Exhibit 1 to the previously-filed Affidavit of D. Blackburn.

The Ad Hoc Committee on Misdemeanants *met three times* and developed proposed amendments to the misdemeanor rules that would address the concerns raised by the various Commissioners. The Ad Hoc Committee then conducted an extensive *survey* of all member states that provided a detailed *analysis* of the reasons why many states were unable to comply with the prior misdemeanant rule that required all misdemeanants to be supervised. These concerns were motivated by both logistical and fiscal limitations on the agencies charged with administration and enforcement of the Compact and its rules. *See* Affidavit of D. Blackburn, Exhibit 1, Misdemeanor Survey Report, pp. 2-7.

The survey also *polled* the member states on their ability to comply with the proposed amendments. The misdemeanor survey results revealed that 71% of the states could comply with the proposed amendments to the misdemeanant rules. *See* Affidavit of D. Blackburn, Exhibit 1, Misdemeanor Survey Report, pp. 2-7. Based on *all* of this information, both the Ad Hoc Committee and the Commission's Executive Committee approved the amendments to the misdemeanor rules. *See* Affidavit of D. Blackburn at

¶8.  Subsequently, at the Commission meeting on March 12, 2004, the misdemeanant amendments were *debated* by the Commission's members, and after *deliberation*, were adopted by a collective plurality of 73%.  *See* previously-filed Affidavit of D. Blackburn, ¶9.

The amendments to the misdemeanor rules thus had the requisite evidentiary basis at least in the survey conducted by the Ad Hoc Committee that revealed that the member states collectively believed the amendments could be enforced.  The amendments were based on more than just the survey, however, including the comments that are a part of the public record and the deliberations at the March 12, 2004 meeting of the full Commission.  But none of this is acknowledged, rebutted, or addressed sufficiently in the Complaint to evidence the absence of a proper evidentiary basis for the rulemaking.

Pennsylvania makes only a conclusory allegation attacking the survey but does not allege how the survey fails to support the rulemaking.  Indeed, the record contains a minority position of Pennsylvania's Commissioner Martinez that is similarly conclusory, and fails to note any evidentiary support for the argument that the survey is flawed.  *See* Exhibit 1 to Affidavit of D. Blackburn.  The Court may notice that there was a close correlation between the survey results, 71% of the members stating that the amendments could be complied with, and the ultimate decision of the Commission's members, with 73% of the members approving of the amendments.  This correlation supports the proposition that the survey has evidentiary foundation.  Similarly missing from Pennsylvania's Complaint is any evidentiary or factual support for its challenges to the conduct of the Ad Hoc Committee, of which Commissioner Martinez was a member.

Therefore, Plaintiffs have failed to carry the burden of alleging facts which, if true, demonstrate that the misdemeanor amendments were promulgated in the absence of substantial supporting evidence. On the contrary, the amendments were passed after extensive review, research and debate.

Pennsylvania's procedural objections also have no merit. As a legal matter, the Commission complied with the procedures governing the adoption of rules provided in both the Bylaws and the Compact. Pennsylvania's argument that the Commission must "adhere" to all of the provisions of the Administrative Procedures Act ("APA") misreads the Interstate Compact, which only requires that the Commission's rulemaking substantially conform to the principles of the APA. In terms of procedure, a primary goal of the APA is to provide interested parties with notice and an opportunity to comment with evidence to support their position. *See Nat'l Ass'n of Homebuilders v. Unites States Army,* 311 F. Supp. 2d 91, 101-102 (D.D.C. 2004). Here, that standard has been met. The Commission provided public notice of both the amendments and the March 12, 2004 meeting at which the amendments were passed. Members of the Commission were also provided an opportunity to comment on the misdemeanor amendments before the Commissioner voted. These procedures comport with the Commission's standards. *See* Affidavit of D. Blackburn at ¶9.

Pennsylvania has not made any specific allegation whatsoever in its Complaint that articulates how the amended misdemeanant rules that it challenges fail to conform to the rulemaking record, which consists of the Ad Hoc Misdemeanor Committee report and supporting documentation, comments received from interested persons, and the debate and deliberation concerning the amended rules that occurred during the Commission

meeting at which they were adopted on March 12, 2004.  In this case, there are no facts alleged by Pennsylvania that are sufficient to make a valid claim under the Interstate Compact and therefore, Pennsylvania's Complaint fails to state a claim on which relief can be granted.  Moreover, having no viable claim upon which the relief that it seeks can be granted, Pennsylvania's claims are due to be dismissed.  *See, e.g., R.S. v. District of Columbia*, 292 F. Supp. 2d 23, 28 (D.D.C. 2003).

**B.  Venue Should Be Transferred to the Eastern District of Kentucky**

The Commission further requests that this Court transfer this case to the Eastern District of Kentucky under 28 U.S.C. §1404(a).

This statute provides that, "for the convenience of parties, and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  "The main purpose of section 1404(a) is to afford defendants protection where maintenance of the action in the plaintiff's choice of forum will make litigation oppressively expensive, inconvenient, difficult, or harassing to defend."  *Starnes v. McGuire,* 512 F.2d 918, 927 (D.C. Cir. 1974)*.*  A case may be transferred under § 1404(a) if the transferee court is an appropriate forum and transfer serves the interests of convenience and fairness.

Under § 1404(a) a case may be transferred if: (1) venue is proper, and (2) the exercise of personal jurisdiction over the defendant(s) would have been proper at the time the suit was originally filed.  *Hoffman v. Blaski,* 363 U.S. 335, 343-44 (1960)*; Relf,* 511 F.2d at 807.  In general, venue is proper in a district where any defendant resides if all defendants reside in the same state, or where a substantial part of the events or omissions giving rise to the claim occurred.  *See* 28 U.S.C. 1391 (a)-(b).  Personal jurisdiction is

proper if permitted under a state's long arm statute and if a defendant has minimum contacts with a forum such that the exercise of jurisdiction comports with traditional notions of fair play and substantial justice. *See GTE New Media Serv. Inc. v. Bell S. Corp.,* 199 F.3d 1343, 1347 (D.C. Cir. 2000).

Whether the transfer of a case under 1404(a) will serve the interests of convenience and fairness is a fact specific determination based on the court's evaluation of the following factors:

(1)    What best serves the private interests of the litigants, including:

        (a)    the plaintiff's choice of forum,

        (b)    the convenience of the parties,

        (c)    the ability to access sources of proof,

        (d)    the convenience of key witnesses,

        (e)    the availability of compulsory process for unwilling witnesses,

        (f)    the cost of procuring attendance of willing witnesses,

        (g)    the possibility of viewing premises.

(2)    What best serves the public interest, including:

        (a)    the administrative difficulties caused by court congestion,

        (b)    the local interest in the dispute and imposition of jury duty, and

        (c)    the forum's familiarity with the governing law.

*See Norwood*, 349 U.S. at 32 (holding that the transfer of venue under 1404(a) is determined using the same factors for dismissal based on *forum non conveniens*, articulated in *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508 (1947), and that courts have broader discretion to order 1404(a) transfer); *In re Scott,* 709 F.2d 717, 720 (D.C. Cir.

1983) (holding that a court must consider the factors traditionally associated with *forum non conveniens* in determining whether to grant discretionary transfer under 1404(a)).

1. **The Best Interest of The Litigants is Served by Transfer to The Eastern District of Kentucky**

The Commission is an unincorporated agency of forty-nine states and the District of Columbia, and its principal place of business is at its national headquarters, located at 2760 Research Park Drive, P.O. Box 11910, Lexington, Kentucky 40578-1910.  Neither the Commission nor its staff has ever resided in the District of Columbia.  It does not have an office in the District of Columbia nor does it own property or have an agent there.  If any of the claims of Pennsylvania survive that the Commission is required to defend, it will be necessary during discovery and the trial of this matter to gain access to the official books and records of the Commission concerning the record that allegedly fails to support the Commission's decision, and these records are all located in Kentucky. Furthermore, the likely witnesses with personal knowledge of the rulemaking process involved, including its evidentiary support, the issuance of notice, the receipt of comments, the deliberations, and the decision, consist centrally of the Executive Director and Commission staff, which are all located in Kentucky.  Potential witnesses include the Executive Director, the webmaster of the Commission's website, the Logistics and Administrative assistant, and clerical staff.  All of these potential witnesses from whom discovery depositions may be necessary, and who may subsequently be called to testify in this action, reside and work in Lexington, Kentucky.  Other potential witnesses include other members of the Commission, and the Ad Hoc Committee, who have all voluntarily associated with the Commission, based in Kentucky, and none of these is a resident of the District of Columbia.  All of these witnesses are beyond the subpoena power of the Court

in the District of Columbia.  In addition, even if their participation in a trial in the District

of Columbia can be obtained voluntarily, the cost of bringing them to the District of

Columbia will be an unfair financial and logistical burden that, with particular regard to

the staff, will be disruptive of the operations of the headquarters office, due to the

necessity of potentially prolonged absences from Kentucky to attend depositions and

trial.  Moreover, fees for legal services and other costs of litigation are considerably

higher in the District of Columbia than in Lexington, Kentucky.  *See* second Affidavit of

Don Blackburn dated July 28, 2004, attached hereto and incorporated by reference

herein.

It cannot be meaningfully more convenient for Pennsylvania to litigate this matter

away from its home forum in the District of Columbia than in Kentucky.  Any

inconvenience to Pennsylvania resulting from transfer to the Eastern District of Kentucky

is far from substantial.  Pennsylvania's primary witness appears to be Commissioner

Benjamin Martinez, who has voluntarily traveled both out-of-state and to Kentucky for

the Commission's business at issue there.  Moreover, the Commonwealth of

Pennsylvania has the vast financial and human resources of a sovereign state and will be

required to incur air travel and related expense in either this Court or the Eastern District

of Kentucky.  Its counsel, state employees, will not cost more – or less – in one

jurisdiction or the other.  Thus, when any inconvenience to Pennsylvania is weighed

against the substantial hardships that litigation in this Court will impose on the

Commission, such inconvenience is negligible.  *See* second Affidavit of Don Blackburn .

   **2.  Requiring the Commission to Defend this Suit in the District of Columbia
       Offends Notions of Fair Play and Substantial Justice**

In *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, at 476-77, (1985):

> [M]inimum contacts . . . may be considered in light of other factors . . . [including] "the burden on the defendant," "the forum State's interest in adjudicating the dispute," "the plaintiff's interest in obtaining convenient and effective relief," "the interstate judicial system's interest in obtaining the most efficient resolution of controversies," and the "shared interest of the several States in furthering fundamental substantive social policies." *World-Wide Volkswagen Corp. v. Woodson,*. . . 444 U.S. [286], at 292, 100 S.Ct., at 564 [(1980)].

A consideration of each of these enumerated additional factors makes it even clearer that "fair play and substantial justice" demand that the Commission should not be required to defend Pennsylvania's claims in the District of Columbia because an assessment of the minimum contacts at issue here reveals substantial factors weighing in favor of Kentucky as the judicial forum, if one is required. The Commission should be permitted to defend this case in the Eastern District of Kentucky based on the location of the parties, the key witnesses, other evidence in this case and the financial and logistical burdens of the respective parties. *See* second Affidavit of Don Blackburn.

### 3. <u>The Public Interest is Best Served By Transfer to the Eastern District of Kentucky</u>

The public interest in an Interstate Compact that effectively tracks and supervises offenders transferring between states will be served by minimizing the disruption that will result from a prolonged period of uncertainty as to which misdemeanants among the criminal population to be served will be supervised. This period of disruption is likely to be shorter in the Eastern District of Kentucky due to relative caseloads of the respective districts. *See* second Affidavit of Don Blackburn. In *Starnes v. McGuire,* the court upheld the district court's *sua sponte* discretionary transfer of a prisoner's habeas petition based on the convenience of the Defendant, the availability of witnesses and files, docket

congestion and the potential speed of resolution. In this case, these factors all militate in favor of ordering transfer of venue to the Eastern District of Kentucky.

## V. CONCLUSION

For all the foregoing reasons, and based upon the authorities cited herein, the Commission submits that Pennsylvania's claims be dismissed at its cost. In the alternative, should any issues remain for determination, venue should be transferred to the Eastern District of Kentucky.


Respectfully submitted,


MASTERS, MULLINS & ARRINGTON    ARENT FOX PLLC

_____/s/_____        _____/s/_____
Richard L. Masters                        Hunter T. Carter, Esq.
1012 South Fourth Street               Randall A. Brater, Esq.
Louisville, Kentucky 40203            Arent Fox PLLC
(502) 582-2900                            1050 Connecticut AVE NW
(502) 587-0931 (fax)                   Washington DC 20036-5339
                                      (202) 857-6000
                                      (202) 857-6395 (fax)

**CO-COUNSEL FOR DEFENDANT**    **CO-COUNSEL FOR DEFENDANT**

## CERTIFICATE OF SERVICE

I hereby certify that on the 28th day of July, 2004, I caused the foregoing CONSOLIDATED MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS OR, ALTERNATIVELY, TO TRANSFER VENUE UNDER 28 U.S.C. §1404(a) to be served electronically, by facsimile, and/or by regular U.S. mail upon the following:

Linda J. Laub
Deputy Chief Counsel
Commonwealth of Pennsylvania
Board of Probation and Parole

_/s/_____
Randall A. Brater